ENTEX, A DIVISION OF NORAM EN-
ERGY CORP. n/k/a Reliant Energy–
Entex, Noram Energy Corp. f/k/a Ark-
la, Inc., Arkla, Inc., Individually and
d/b/a Entex, Appellants,

v.

Maria T. GONZALEZ and Jose Salvador
Gonzalez, As Next Friends of Teresa
M. Gonzalez, A Minor Child, Appel-
lees.

No. 14–99–01108–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 23, 2002.

Rehearing Overruled July 25, 2002.

Amy Douhitt Maddux, Kent Westmoreland, Macey Reasoner Stokes, Marilee R. Kainer, Houston, for appellants.

Michael L. Davis, Robert D. Green, Steven Micael Duble, Houston, for appellees.

Panel consists of Justices HUDSON, EDELMAN, and LEE.*

## OPINION

RICHARD H. EDELMAN, Justice.

In this personal injury case, Entex, a division of NorAm Energy Corp. n/k/a Reliant–Energy–Entex, NorAm Energy Corp. f/k/a Arkla, Inc., Arkla, Inc., Individually and d/b/a Entex (collectively "Entex") appeal a judgment in favor of Maria T. Gonzalez and Jose Salvador Gonzalez, as next of friends of Teresa M. Gonzalez, a minor child, (collectively, "the Gonzalezes") on the grounds that Entex owed the Gonzalezes no duty that was breached in this case. We reverse the judgment of the trial court and render a take-nothing judgment.

### Background

On April 22, 1994, four-year-old Teresa Gonzalez was severely injured in a fire (the "fire") in her family's home. The Gonzalezes sued Entex, their gas supplier, for negligence.[1] The evidence at trial showed that the fire started in the Gonzalezes'

utility room when gasoline vapors came into contact with the pilot light of the family's gas-fired water heater (the "water heater"), which was not elevated off the floor. The jury found that negligence by Entex was thirty-five percent responsible for causing the fire and awarded damages which resulted in a judgment against Entex for $1,270,139.73.

Entex challenges the judgment on the ground that it had no duty to warn the Gonzalezes of any dangerous condition regarding the water heater because: (1) it had no duty to inspect the Gonzalezes' property; (2) it had no actual knowledge of any dangerous condition there; (3) Entex's policies, practices, and procedures did not create a duty to inspect or warn the Gonzalezes about the condition of their water heater; and, (4) in the alternative, any common-law duty Entex had was satisfied by the preventative measures that Entex had already taken.

### Standard of Review

A legal duty must exist before a defendant can be liable for negligence. *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001). Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999).

In this case, Entex preserved its complaint regarding a lack of duty by asserting in its motion for judgment notwithstanding the verdict ("JNOV") that it owed the Gonzalezes no duty as a matter of law. A trial court may grant a JNOV if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Brown v. Bank of Galveston, Nat'l*

---

* Senior Justice Norman R. Lee sitting by assignment.

1. The Gonzalezes also sued the manufacturer of the water heater but settled their claims against it before trial.

*Ass'n*, 963 S.W.2d 511, 513 (Tex.1998). In determining whether there is no evidence to support the jury verdict, we consider the evidence in the light most favorable to the verdict and reasonable inferences that tend to support it. *Id.* We thus address whether there is any evidence that Entex owed the Gonzalezes any duty that it breached in this case.

### Existence of Duty

The Gonzalezes contend that, when Entex sent its serviceman (the "serviceman") to their home to replace the gas meter nearly three years before the fire, he had a duty to: (a) inspect the condition of the water heater; (b) warn them of the danger posed by the water heater being unelevated in a utility room where materials with flammable vapors were, or were likely to be, stored;[2] and/or (c) refuse gas service to the water heater until it was elevated.

### *Scope of the Negligence Charge Submitted*

■ Even assuming the existence of the duty asserted by the Gonzalezes, in order to find Entex negligent for breaching that duty, the jury would have had to conclude that: (1) a dangerous condition existed; (2) Entex knew of the dangerous condition;

and (3) Entex failed to exercise reasonable care to warn or otherwise make the condition safe. These elements are essentially the same as those necessary for a finding of premises liability, as contrasted from ordinary negligence, *i.e.*, a negligent activity. However, decisions of the Texas Supreme Court in recent years have repeatedly and uniformly held that liability based on the existence of these elements can not be imposed unless the negligence question submitted to the jury also contains instructions or definitions setting forth these elements (the "additional elements"). *See, e.g., Clayton W. Williams, Jr. v. Olivo*, 952 S.W.2d 523, 528–30 (Tex. 1997).[3]

In this case, the jury charge had no instructions or definitions containing the additional elements, nor were any such instructions or definitions sought by the Gonzalezes (or Entex). Therefore, although the jury charge was correct with regard to a theory of recovery based on a negligent activity, it does not support liability based on the duty asserted by the Gonzalezes relating to a dangerous condition of property.[4] In other words, despite the absence of a charge error, the judgment can not be affirmed based on violation of a duty that the jury was not asked

2. The Gonzalezes contend that the unelevated condition of the water heater in the utility room was either apparent to the serviceman when he went into the utility room during his service call (the "service call") or, if it was not then apparent, he had a duty to inspect the water heater to determine whether it was unelevated and flammable vapors were near it.

3. *See also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex.2000) (holding that a negligent undertaking, *i.e.*, assumption of duty, theory of recovery also requires submission of particular elements in charge instructions or definitions because, like a premises liability theory, it requires factual predicates to be established beyond those required to

impose liability for ordinary negligence). This is not a departure from the requirement of broad-form submission, but a means to assure that a broad-form submission sets forth the theory of recovery that is actually relied upon to establish liability. *See id.* (noting that the added elements should be included in instructions accompanying a broad-form negligence question). As in *Torrington*, the charge in this case was also not sufficient to support a finding of liability based on negligent undertaking.

4. Conversely, the Gonzalezes do not contend that there is evidence of liability based on a negligent activity, as the charge submitted would have supported.

to consider. However, because this court arguably has discretion in such a circumstance to either remand the case for another trial or render judgment,[5] we proceed to consider whether the law imposes on Entex the duty asserted by the Gonzalezes.

### Duty to Inspect

■■ It has long been established under Texas law that a utility has no duty to inspect a customer's wiring, appliances, or the like, which the utility did not install and does not own or control, for defects before supplying electricity or gas to the customer.[6] To the extent the Gonzalezes argue in this case that Entex's right to withhold gas service to the water heater effectively gave it control over the water heater and thereby subjected it to an affirmative duty to inspect the water heater for defects before turning the gas back on, we decline to so hold because it would eviscerate the foregoing long-established rule to the contrary. In addition, to the extent that such a duty would obligate a utility, before turning gas or electricity on for a customer, to identify and inspect each of the customer's gas or electric appliances for potential defects, such a burden would be unreasonable and well beyond the range of ordinary care.

### Other Duty

■ To the extent the unelevated condition of the water heater in the utility room would have been plainly evident to the serviceman and thus required no inspection to detect, we must determine if that condition is of a type, severity, and immediacy of danger that gives rise to a duty by a utility to act to protect its customer.[7]

■ A gas company may be liable if facts show that it fails to act reasonably after having notice of defects in the pipes through which gas flows. *See Lane v. Community Natural Gas Co.*, 133 Tex. 128, 123 S.W.2d 639, 643 (1939). However, in declining to find a duty by a gas provider to warn of, or refuse to supply gas to, an unelevated water heater located in a garage, a California Court of Appeals has distinguished that condition from a leaking or otherwise unsafe pipe, connection, or appliance on the basis that the latter could itself cause an explosion or fire if gas were merely supplied to it. *See Salazar v. S. Cal. Gas Co.*, 54 Cal.App.4th 1370, 63 Cal. Rptr.2d 522, 527–28 (1997, review denied).[8]

---

5. *See* Tex.R.App. P. 43.3(b) (when reversing a trial court's judgment, the appeals court must render the judgment that the trial court should have rendered except when the interests of justice require remand for another trial); *Torrington*, 46 S.W.3d at 841 (stating that cases have been remanded in the interest of justice where the reversing decisions have altered or clarified the way in which a claim should be submitted to the jury).

6. *See Central Power & Light Co. v. Romero*, 948 S.W.2d 764, 766–67 (Tex.App.-San Antonio 1996, writ denied); *Beans v. Entex, Inc.*, 744 S.W.2d 323, 325 (Tex.App.-Houston [1st Dist.] 1988, writ denied); *Huddleston v. Dallas Power & Light Co.*, 93 S.W.2d 199, 200 (Tex.Civ.App.-Fort Worth 1936, writ dism'd).

7. In determining whether a tort duty should be recognized, courts consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury, and the consequences of placing the burden on the defendant. *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex. 1998).

8. *See also Giordano v. Rheem Mfg. Co.*, 643 So.2d 492, 494–97 (La.Ct.App.1994) (holding that gas supplier had no negligence duty to warn of or refuse gas to unelevated water heater in storage room where there were no flammable vapors near the water heater when gas service was commenced); *but cf. Harris*

*Salazar* further reasoned that available data showed no certain correlation between the elevation of gas-fired water heaters and a decrease in the incidence of fires caused by flammable vapors coming into contact with the water heaters, but possibly an increase in injuries and destruction from elevating them. *Id.* at 529–30.[9] Thus, regardless where in a home an otherwise safe gas-fired water heater is located or how it is positioned, the danger of fire or explosion can ultimately be avoided only if flammable vapors are kept away from it. *See id.* at 530–31. Similarly, if the focus of safety efforts is on the elevation of water heaters rather than the storage of flammable vapors near them, it could arguably lull gas customers into a false sense of security regarding the safety of elevated water heaters. *Id.*

▮ Based on these considerations, we do not believe that a negligence duty can be imposed on Entex based solely on the unelevated condition of a water heater that it neither installed nor owned or controlled. Rather, any duty to assure that water heaters are elevated should be imposed, if at all, on those who specify, sell, or install them and are thereby in a position to bring about that result from the outset rather than after the fact. Likewise, any duty to prevent flammable vapors from being placed near gas-fired appliances (whether elevated or not) should

be imposed, if at all, on appliance sellers and installers and, once any necessary warning is reasonably provided, the owner of the appliance. We therefore hold that a gas provider can be subject to liability for failing to prevent flammable vapors from being ignited by a gas-fired appliance only where the provider has knowledge that flammable vapors actually are being, or will be, stored near the appliance.[10]

### Entex's Knowledge of Flammable Vapors

The Gonzalezes also argue that Entex had a duty to warn or refuse service because there was legally sufficient evidence that its serviceman had actual knowledge during the service call that flammable vapors were being stored near the water heater.

▮ If more than a scintilla of evidence exists to support a finding, the evidence is legally sufficient. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 502 (Tex. 2001). However, evidence that is so weak as to do no more than create a mere surmise or suspicion of its existence is no evidence. *Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997). Thus, meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and legally insufficient to support a finding.

*v. Northwest Natural Gas Co.,* 284 Or. 571, 588 P.2d 18, 20 & n. 5, 23 (1978) (holding that gas provider was not liable under strict liability theory but finding without explanation, that plaintiff's complaint that gas company was negligent in failing to warn of danger that flammable vapors can be ignited by gas appliances was sufficient to state a claim for negligence).

9. As reflected in the testimony in this case, elevating a water heater can lessen the chance of fire from vapors that are heavier than air, but increase the likelihood of fire from vapors that are lighter than air. Simi-

larly, to the extent that elevating a water heater protects from the risk of flammables stored on the floor, it may provide less protection from those placed above floor level, such as on a shelf.

10. There is no evidence in this case that an unelevated water heater is itself a dangerous condition, but only that a dangerous condition can be created if flammables are placed near it. *Cf. City of San Antonio v. Rodriguez,* 931 S.W.2d 535, 536 (Tex.1996) (holding that the dangerous condition was not the leaky roof but instead the slippery floor that resulted when water leaked through the roof).

*Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). In this regard, a vital fact may not be established by piling inference upon inference. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968). Therefore, facts from which an inference may properly be drawn must be established by direct evidence, not by other inferences. *See Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791, 794 (Tex. 1955).

■ In this case, there was no direct evidence that, on the date of Entex's service call, a lawn mower or any flammable vapors were located in the utility room at all, let alone near the water heater, or that Entex's serviceman saw any there. As circumstantial evidence of these facts, the Gonzalezes rely on their testimony to the effect that they always stored their lawn mowers and gasoline container on the floor of the utility room. José Gonzalez further testified that the only thing for which they kept gasoline was their lawn mower, *i.e.*, they only kept gasoline when they had a lawn mower. This testimony is legally sufficient to prove that, during any periods in which the Gonzalezes had lawn mowers, they stored them and their gasoline in the utility room.

However, one portion of the foregoing testimony is specifically limited to the time of the accident, and there is no indication, as to the remaining portions, of the periods of time to which they pertain. Nor is there any evidence that the Gonzalezes owned a lawn mower at the time of the service call or that they always owned one.[11]

■ Even if we could infer that a lawn mower or gasoline was in the utility room on the day of the service call, in order to find evidence supporting a duty, we would have to further infer that either was near enough to the water heater that day to present a danger[12] and was at least visible to, if not actually seen by,[13] the serviceman among any other items stored there.[14] Because these necessary inferences cannot be validly drawn from the direct evidence provided, legally sufficient evidence does not exist to prove that Entex had knowledge that flammable vapors were being stored near the Gonzalezes' water heater on the date of the service call.

### Statutory / Regulatory Duty

■ The Gonzalezes also argue that Entex had a duty to warn of, or refuse gas service to, their water heater by virtue of a statute and Railroad Commission regulation. *See* TEX. UTILITIES CODE ANN.

---

11. Not only does the evidence fail to support an inference that the Gonzalezes owned a lawn mower at the time of the accident or at all times, but Maria and José Gonzalez each testified that there were (unspecified) periods of time before the accident during which they did not own a lawn mower, thus affirmatively establishing that they did not always own a lawn mower.

12. We have found no evidence of how near the water heater the lawn mower and gasoline were stored in the utility room or what other items were stored between them. To the extent the evidence had shown that flammable vapors were visible in the utility room at the time of the service call, but were placed a safe distance away from the water heater, an immediate danger would not have been present, and an inference that the Gonzalezes needed no warning to do so would have been at least equally plausible with any contrary inference.

13. Because there is no evidence showing that the serviceman had either actual or constructive knowledge of flammable vapors being near the water heater during his service call, we need not address whether actual or only constructive knowledge was needed.

14. The serviceman had no recollection of his visit to the Gonzalezes' house.

§ 104.251 (Vernon 1998) ("[a] gas utility shall furnish service, instrumentalities, and facilities that are safe, adequate, efficient, and reasonable."); 16 TEX. ADMIN. CODE § 7.45(4)(D) (West 2001) (authorizing, but not requiring, Entex to disconnect gas service where there is a violation of Entex's rules for the operation of nonstandard equipment or a known dangerous condition). However, the Gonzalezes cite no cases imposing a negligence duty based on these, or any similar or analogous, statute or regulation.[15]

■ When civil liability is based on a statute, among other things, the standard of conduct must be clearly defined in the statute and the injury must grow directly out of a breach of that standard. *Praesel v. Johnson*, 967 S.W.2d 391, 395–96 (Tex. 1998). Examples of statutes on which negligence liability has been based include traffic provisions prohibiting specific driving conduct [16] and the statute requiring the reporting of child abuse. *See Thapar*, 994 S.W.2d at 639–40. Because the statute and regulation upon which the Gonzalezes rely do not prohibit or require any specific conduct, they do not provide an adequate basis for imposition of a negligence or negligence *per se* duty.

*Assumption of Duty*

■ The Gonzalezes also assert that Entex voluntarily assumed a duty to them and other customers to inspect their appliances for unsafe conditions because: (1) it generally requires them to correct hazardous conditions before it will provide gas service; (2) it has a legal right of access to customers' premises; and (3) in this case, the serviceman turned the gas supply to the house back on and re-lit the pilot light on the unelevated water heater after replacing the gas meter. The Gonzalezes further assert that, because the water heater was no longer a danger while the gas was turned off, the serviceman increased the risk of harm when he turned the gas back on and/or re-lit the pilot light, making a showing of reliance unnecessary.

■ To establish a negligence duty based on such an undertaking, there must have been evidence of: (1) an undertaking by Entex to render services to the Gonzalezes which Entex should have recognized as necessary for their protection; and (2) either that (a) Entex's negligence increased the risk of harm to the Gonzalezes; or (b) their harm was suffered because of their reliance on the undertaking. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex.2000); RESTATEMENT (SECOND) OF TORTS § 323 (1965). In determining whether there is an increased risk of harm, we compare the risk of harm resulting from the negligence to that existing before, not during, the undertaking.[17]

■ In this case, there is no evidence of a request to the serviceman to inspect the water heater or advise the Gonzalezes of its condition; or that Entex's tariff contains any such undertaking. The Gonzalezes also assert that, by having internal procedures to inspect and warn customers about unelevated water heaters and stor-

---

15. Nor, as discussed above, is there evidence of a known unsafe condition on the date of the service call.

16. *See Praesel*, 967 S.W.2d at 395–96.

17. *See Central Power & Light Co.*, 948 S.W.2d at 769, n. 7 (holding, in the alternative, that reversal was required because there was no evidence that a negligent inspection left the plaintiff in worse condition than if an inspection had never been undertaken); RESTATEMENT (SECOND) OF TORTS § 323 cmt. c (noting that the actor may abandon his undertaking at any time unless by giving aid, he has put the other in a worse position than he was in before the actor attempted to aid him).

ing flammable vapors near them,[18] Entex assumed a negligence duty to follow those procedures in this case. However, such internal procedures do not create a negligence duty where none would otherwise exist.[19] Therefore, an undertaking did not arise from Entex's internal procedures.

In addition, we have found no evidence that any risk of harm from the water heater was greater as a result of the service call than it had been before it or that the Gonzalezes relied [20] on Entex's alleged undertaking to inspect their water heater and to warn or refuse service in light of any defects or hazards therein.[21] With regard to reliance, the Gonzalezes contend that they were entitled as a matter of law to rely on the fact that Entex is bound by Texas statutes and regulations governing gas utilities and by Entex's own tariff to provide safe gas service. However, the Gonzalezes cite, and we have found, no authority to support such implied or constructive reliance, and rather than providing proof of actual reliance by the Gonzalezes,[22] it would effectively operate to eliminate that reliance requirement in this context. Therefore, we conclude that there was no evidence that Entex assumed a negligence duty in this case.

*Contractual Duty*

■ The Gonzalezes also argue that Entex had a negligence duty arising from its contractual relationship with them and the public duty imposed by its tariff. *See, e.g., Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947) (recognizing that a contract to make repairs creates a relationship and duty of

---

18. In support of this argument, the Gonzalezes cite an Entex employee's testimony that the Entex procedures were part of his job and "part of the deal with the customer" for which Entex does not charge extra.

19. *See Jacobs–Cathey Co. v. Cockrum,* 947 S.W.2d 288, 291–92 (Tex.App.-Waco 1997, writ denied) (holding that company's internal policy of removing debris left at its work sites by other parties did not impose upon the company a negligence duty to parties injured by unremoved debris); *Estate of Catlin v. Gen. Motors Corp.,* 936 S.W.2d 447, 451 (Tex.App.-Houston [14th Dist.] 1996, no writ) (holding that company's safety policies restricting consumption of alcohol on its premises did not create negligence duty that would subject the company to liability for failing to comply with those policies); *Williford Energy Co. v. Submergible Cable Servs., Inc.,* 895 S.W.2d 379, 386–87 (Tex.App.-Amarillo 1994, no writ); *see also Salazar v. S. Cal. Gas Co.,* 54 Cal.App.4th 1370, 63 Cal.Rptr.2d 522, 525–32 (1997, review denied) (holding that gas company had no negligence duty to warn its customer about the hazards of unelevated water heaters or to discontinue service, despite internal company policy of warning customers that elevating water heaters to at least eighteen inches would reduce the risk of flammable vapors being ignited).

20. Nor was there any evidence that the Gonzalezes even knew about these procedures.

21. *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 396–98 (Tex.1991) (holding that JNOV was proper where there was no evidence of the reliance necessary to create a duty under an undertaking theory); *Williford Energy Co.,* 895 S.W.2d at 386–87 (holding that, for undertaking theory, plaintiff cannot rely on internal procedures of company if plaintiff was unaware of and did not rely on these procedures).

22. *See* RESTATEMENT (SECOND) OF TORTS § 324A cmt. e (1965) (describing reliance as being induced to forego other remedies or precautions against such a risk); *id.* illus. 4 (workman is hired to inspect elevator, negligently fails to detect defect, reports that elevator is in good condition, and injury results from undisclosed defect, *i.e.,* the elevator is used in reliance on the report); *id.* illus. 5 (railroad watchman negligently fails to warn of approaching train, and motorist, who knows of usual presence of watchman, receives no warning, drives onto track, and is injured by train, *i.e.,* after affirmatively relying on the lack of a warning).

care whereby the person who makes the repairs can be liable for negligence in doing that work). However, *Scharrenbeck* is distinguishable from this case in that the negligence there was in performing the work that had been contracted for. *See id.* In this case, Entex came to the Gonzalezes' house to change the gas meter and could have been liable for negligence in performing that work. But there is no evidence that it had any contractual obligation to inspect, repair, or warn about the water heater. Therefore, we find no evidence of a negligence duty arising from Entex's contractual obligation to replace the gas meter.

Finding no evidence of any negligence duty by Entex to the Gonzalezes that was breached in this case, we sustain Entex's first and second issues,[23] reverse the judgment of the trial court, and render judgment that the Gonzalezes take nothing against Entex.

LEE, J. not participating.

---

23. We need not reach Entex's third issue, asserted in the alternative.