Affirmed and Memorandum Opinion filed March 16, 2004









Affirmed and Memorandum Opinion filed March 16, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00017-CV

____________

 

BRENDA HOLMAN,
LACHONDRA HOLMAN,

EDNA
HOLMAN, and HOBERT HOLMAN, Appellants

 

V.

 

KRJ MANAGEMENT,
INC., BRIARWICK

CONDOMINIUM
OWNERS ASSOCIATION, INC.,

RUCKEL/DILLON,
INC., d/b/a RUCKEL, DILLON, WRIGHT, INC., Appellees

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 01-15881

 



 

M E M O R A N D U M   O P I N I O N








Appellants, Brenda, Lachondra, Edna, and
Hobert Holman (AHolman@) appeal the trial
court=s grant of summary
judgment in favor of appellee, Ruckel/Dillon, Inc. (ARuckel/Dillon@).[1]  Brenda Holman was rendered a quadriplegic
after slipping and falling on the sidewalk in the Briarwood Condominium
Complex.  In addition to pursuing the
condominium management association and the property management company, Holman
sued the landscaping company, Ruckel/Dillon. 
Ruckel/Dillon moved for summary judgment arguing that it owed no duty to
Holman.  The trial court granted the
motion for summary judgment, and we affirm. 

On Saturday, November 18, 2000, Holman
returned to her condominium after shopping with her mother.  It had been raining for a large part of the
day and was raining  hard as she emerged
from her car.  Carrying a turkey in one
hand and an umbrella in the other, Holman followed a flooded sidewalk to her
unit.  While making her way down the
walkway, Holman apparently stepped in some mud that had accumulated on the
sidewalk, slipped and fell, and seriously damaged her spine.  

Holman originally sued the Briarwick
Condominium Owner=s Association (ABriarwick@) and KRJ
Management, Inc. (AKRJ@), the company
managing the property, alleging the breach of multiple duties of care.  Subsequently, KRJ and Briarwick filed a
third-party action against landscapers, Dennis Wright and Associates, Inc. and
Dennis Wright, individually[2]
alleging that such third-party defendants were liable to Briarwick and KRJ for
contributory negligence, and asserting that the third-party defendants were
also comparatively negligent in causing Holman=s injuries.  Holman later amended her pleadings adding
Ruckel/Dillon as defendants in her case.








Ruckel/Dillon filed a motion for summary
judgment arguing that it owed no duty to Holman or KRJ and Briarwick by virtue
of its landscaping duties; Ruckel/Dillon did not create a dangerous situation;
and Ruckel/Dillon=s voluntary activities at the complex did
not leave Holman in a Aworse position.@ Responses were
filed by Briarwick, KRJ, and Holman. 
Considering the motion for summary judgment and responses, the trial
court found that Ruckel/Dillon did not owe a duty to Holman or Briarwick and
KRJ.  Following the trial court=s grant of summary
judgment, Holman settled with Briarwick and KRJ and those causes of action were
dismissed.  Additionally, the trial court
granted Briarwick and KRJ=s request to dismiss their third-party
action.  All that remains before this
court is Holman=s suit against Ruckel/Dillon. 

A traditional motion for summary judgment
is properly granted when the movant establishes that there are no genuine
issues of material fact to be decided and that he is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Holmstrom v. Lee, 26 S.W.3d 526, 530
(Tex. App.CAustin 2000, no pet.).  A defendant seeking summary judgment must
negate as a matter of law at least one element of each of the plaintiff's
theories of recovery or plead and prove as a matter of law each element of an
affirmative defense. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995).   If the defendant
establishes a right to summary judgment, the burden shifts to the plaintiff to
present evidence raising a fact issue.  Id.  We accept as true all evidence supporting the
non‑movant.  Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 549 (1985). 
We also indulge all inferences in favor of the non‑movant, and
likewise resolve all doubts in his favor. 
Id.  Finally, because the
propriety of summary judgment is a question of law, we must conduct a de novo
review of  the trial court's
decision.  Natividad v. Alexsis, Inc.,
875 S.W.2d 695, 699 (Tex. 1994).








Tort liability requires Aboth the existence
of and the violation of a duty.@  Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 53 (Tex.
1997).  Whether or not there is a duty is
a question of law for the court considering the surrounding facts and
circumstances.  Id. Generally, a
party must Acontrol@ the premises
before a duty of care can arise.  Id.  A party who does not own property, but is put
into control of a premises by the owner Ais under the same
duty as the owner to keep the premises under his control in safe condition.@ City of Denton
v. Page, 701 S.W.2d 831, 834 (Tex. 1986). Control can be demonstrated by
ownership, occupation, management, or possession of property.  Id. at 54; see also De Leon v.
Creely, 972 S.W.2d 808, 812 (Tex. App.CCorpus Christi 1998, no pet.) (citing Restatement
(Second) of Torts Section 323 to say that control requires Aphysical control
of the property or the intention to occupy or possess the property@).   The elements of control can be proven by (1)
a contractual agreement assigning a right to control or (2) evidence of actual
control.  Dow Chem. Co. v. Bright,
89 S.W.3d 602, 606 (Tex. 2002).  

Ruckel/Dillon is merely a lawn maintenance
company.  Not surprisingly, the contract
between the Briarwick Condominiums and Ruckel/Dillon does not assign a right of
control over the sidewalks.  See
Entex, A Div. Of Noram Energy Corp. v. Gonzalez, 94 S.W.3d 1, 11 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied) (finding no contractual right of control where contract did not impose Acontractual
obligation to inspect, repair, or warn about water heater@); Barnes v.
Wendy=s Int=l, Inc., 857 S.W.2d 728, 730 (Tex. App.CHouston [14th Dist.] 1993, no writ)
(finding no control where lessor had a limited right to re-enter under lease,
but no duty to inspect premises or insure that lessee maintained the premises);
see also Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W.
517, 520 (1922) (finding requisite control following elevator malfunction where
defendant contractually agreed to operate and repair elevators), overruled
on other grounds by Burk Royalty Co. v. Walls, 616 S.W.2d 911 (Tex.
1981).  Ruckel/Dillon=s contractual
duties are limited to mowing, pruning, weeding, and fertilizing.  With regard to walkways, the contract only
requires that the sidewalks and driveways Abe kept clean of
clippings and chemically treated to control weed growth.@  Moreover, the contract provides that
Ruckel/Dillon=s employees work only Monday through
Friday.  The contract does not address
safety inspection duties or soil erosion and drainage issues.  








Citing the Texas Supreme Court, Holman
argues that we cannot look solely to the terms of the contract in determining
whether a party has exercised Acontrol@ over a
premises.  See Wal-Mart Stores, Inc.
v. Alexander, 868 S.W.2d 322, 324-25 (Tex. 1993).  There is evidence that Ruckel/Dillon
employees performed additional work not outlined in the contract.  These additional Aporter@ duties included
changing lightbulbs, picking up trash, and keeping common areas free of
debris.  Of particular concern here is
Ruckel/Dillon=s past practice of voluntarily scraping
mud off of sidewalks after rainstorms. 
Holman contends under the authority of Alexander that when
Ruckel/Dillon assumed the responsibility of cleaning the walkways and
performing general non-landscaping chores, it assumed control and, therefore, a
duty of care toward Holman regarding the condition and safety of the sidewalks.

We are unpersuaded by Holman=s reliance on Alexander.  In Alexander a patron tripped and fell
on a concrete ramp in the parking lot of a Sam=s Wholesale
Club.  Id. at 323.  In preparing its defense, Wal-Mart argued
that its lease did not require it to maintain the parking lot.  Id. at 324. Notwithstanding the fact
that the lease imposed a duty on the lessor to maintain parking areas,
the supreme court held that Wal-Mart Aassumed actual
control of the ramp area@ when it decided, A[o]n its own
initiative and at it own expense,@ to build the
ramp.  Id. Conversely, there is no
evidence in the present case to show that Ruckel/Dillon designed, built, or
otherwise participated in the construction of the condominium complex or its
landscape design.  KRJ=s representative
testified that concerns related to structural issues, i.e., raised
sidewalks or standing water in a walkway, would be addressed by a general
contractorCnot the landscaping company.  As far as acting as the complex=s porter, KRJ=s representative
indicated that the porter would not have the authority to install edging,
install drains, or make other improvements without KRJ=s prior consent.

Holman cites as some evidence of expanded
control the fact that while Ruckel/Dillon was required, by contract, to provide
only one employee, it routinely sent two employees to work at the Briarwick
condominiums  We do not see how this
testimony provides any logical evidence of control over the walkways or proof
that Ruckel/Dillon assumed a duty to keep them safe.  

Finding no evidence of control, we look to
the exceptions to the general rule.  A
duty of care can arise in two additional situations.  First, agreeing to Amake safe a
dangerous condition of real property@will impose a duty
of care.  Lefmark, 946 S.W.2d at 54 (citing City
of Denton v. Page, 701 S.W.2d 831 (Tex. 1986)).  Second, the creation of a dangerous condition
will result in a duty of care.  Id.
at 54. 








There is no evidence that the landscaping
contract concerned safety issues or that safety was the motivating factor in
Ruckel/Dillon employees= decision to scrape up mud. KRJ=s representative
explained that Ruckel/Dillon was never commissioned to inspect the property for
tripping hazards. Representatives from both Briarwick and KRJ testified via
deposition that Ruckel/Dillon was never asked to address soil erosion issues
such as mud spilling onto walkways. 
Although the contract to perform landscaping work at the condominium
complex did not require the removal of mud, Dennis Wright, co-owner of
Ruckel/Dillon, surmised that Ruckel/Dillon employees removed mud from sidewalks
in an effort to improve the appearance of the property.  He maintained that such conduct would have
been in compliance with its contract because it concerned aesthetics.  

The facts do not demonstrate that
Ruckel/Dillon created a dangerous condition. 
Ruckel/Dillon was only responsible for maintaining the landscaping on
weekdays.  On Saturday, the day of Holman=s accident, Ruckel/Dillon
had no contractual duties.  The hazardous
condition was the result of a naturally occurring rainstorm that washed mud
onto the sidewalk.  In addition to not
designing or constructing the complex=s landscaping,
Ruckel/Dillon supplied neither the dirt nor the water that produced the mud.

Should a person desire to voluntarily
assume an undertaking, he must exercise reasonable care; however, the duty Ais limited to that
undertaking, and will not normally give rise to an obligation to perform
additional acts of assistance in the future.@  Fort Bend County Drainage Dist. v.
Sbrusch, 818 S.W.2d 392, 396-97 (Tex. 1991) (citing Restatement (Second) of Torts ' 324A (1965)).
Accordingly, the scope of Ruckel/Dillon=s undertaking is
limited to weekdays and the time period following a rainstorm.  Although Holman argues that Ruckel/Dillon
negligently performed its maintenance duties, we find no fact issue considering
both how and when the accident occurred. 
See Torrington v. Stutzman, 46 S.W.3d 829, 839 (Tex.
2000) (indicating a fact issue in products liability case where conflicting
evidence as to scope of defendant=s undertaking to
discover defective products).








We are unpersuaded that Ruckel/Dillon=s activities
created some future duty to act.  Future
assistance is required if the injured party was put in a worse position through
the defendant=s actions. 
Id. at 396.  AA person is put in
a worse position if the actual danger to him has been increased by the partial
performance, or if in reliance he has been induced to forego other
opportunities of obtaining assistance.@  Id.; see also Entex, 94 S.W.3d at 9 (declining
to find for plaintiff under an assumption of duty theory where there was no
evidence that defendant was asked to inspect water heater or analyze its condition).  Ruckel/Dillon was never asked to evaluate
safety concerns, and its employees did not work on weekends.  We do not agree with Holman=s assertion that
residents were put in greater risk of harm by the removal of mud on prior
occasions.  See Sbrusch, 818 S.W.2d at 398 (finding
no evidence that past repairs created an increased risk of future harm).  Moreover, 
the residents could not have reasonably relied on a prior activity that
under the circumstances presented here would never have been performed, e.g.,
cleaning mud off the sidewalks during a rainstorm.  See Entex, 94 S.W.3d at 10 (requiring
that a plaintiff provide proof of actual reliance).

Ruckel/Dillon conclusively established
that it owed no duty to Holman.  Having
negated the element of duty, Ruckel/Dillon is entitled to summary
judgment.  The judgment of the trial
court is affirmed.  

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed March 16, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  No appeal is
taken against the judgment dismissing plaintiffs claims against the other
defendants,  KRJ Management, Inc. and
Briarwick Condominium Owners Association.





[2]  Dennis Wright
and Associates, Inc. merged with Ruckel/Dillon, Inc. in February, 1996 to form
Ruckel/Dillon, Inc. doing business as Ruckel, Dillon, Wright, Inc.