

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00225-CV
_____

CHRIS SAMPLES, INDIVIDUALLY AND GENERAL MANAGER OF CHRIS SAMPLES BROADCASTING, INC. D/B/A KXDJ RADIO STATION, CHRIS SAMPLES BROADCASTING, INC., D/B/A KXDJ RADIO STATION, RICHARD BIGGS, MICHAEL CRAIN, AND DOT COMPLY, INC. D/B/A USA INVESTIGATIONS, APPELLANTS

V.

ESTATE OF THOMAS BROWN, THROUGH ITS AUTHORIZED REPRESENTATIVE, PENNY MEEK, PENNY MEEK INDIVIDUALLY, CHRIS MEEK, AND TUCKER BROWN, APPELLEES

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CV-0237, Honorable Phillip Hayes, Presiding

June 28, 2024

MEMORANDUM OPINION

Before PARKER and YARBROUGH and ROSE,[1] JJ.

The sudden disappearance of a promising young man became prime fodder for media sensation, "internet sleuths," and "real crime" podcasts, leaving a grieving family no means to lash out except by the filing of a lawsuit. And, even this act, it would seem,

---

[1] Jeff Rose, Chief Justice (Ret.), Third Court of Appeals, sitting by assignment.

will not bring them any closer to reconciling the tragic death of their loved one. Appellants, Chris Samples, individually and as general manager of Chris Samples Broadcasting, Inc., d/b/a KXDJ Radio Station; Chris Samples Broadcasting, Inc., d/b/a KXDJ Radio Station ("KXDJ"); Richard Biggs; Michael Crain; and Dot Comply, Inc., d/b/a USA Investigations ("Dot Comply"), filed this interlocutory appeal from the denial of their respective motions under the Texas Citizens Participation Act ("TCPA") to dismiss the claims of Appellees, the Estate of Thomas Brown, Penny Meek, Chris Meek, and Tucker Brown (collectively the "Meeks").[2] Appellants separately all raise the same issue: the denial of each of their respective TCPA motions. We reverse, render judgment, and remand for further proceedings.

## BACKGROUND

In November 2016, Thomas Brown, an eighteen-year-old high school student residing in Canadian, Texas, inexplicably disappeared. His Dodge Durango was found at a local water treatment facility without a trace of Brown and no clue where he could be found. Some months later, his backpack was recovered in a wooded area, leading his family to believe he was the victim of a robbery or a murder. Investigations conducted by several law enforcement agencies, including the Sheriff's Department, Texas Rangers, Office of the Attorney General, and the FBI, were unable to locate the teenager. Brown's family, the Meeks, hired a private investigator, Philip Klein, who was also unable to locate the missing young man.

---

[2] TEX. CIV. PRAC. & REM. CODE Ann. §§ 27.001–27.011.

Brown's skeletal remains were eventually found over two years later in January 2019. However, the discovery of his remains only heightened speculation over his death and garnered both local and national news coverage. Members of the Meek family gave several interviews and made several appearances in various media in which they gave their personal theories on the cause of Brown's death. Klein gave his own theory in media interviews, including a series of interviews with Appellant Chris Samples. Klein believed, at the time, Brown was the victim of an elaborate murder plot involving local law enforcement. The Office of the Attorney General investigated the various theories and created a written report with its findings. The report stated the cause of death was inconclusive but likely suicide. No charges were brought by any law enforcement agency against any person in connection with Brown's death.

In 2022, Samples, a radio host and podcaster from Perryton, invited Michael Crain, a former state law enforcement officer and private investigator, to speak with him on his show on KXDJ Radio. Crain's theory of how Brown died differed from the one proposed by Klein, the Meeks' investigator. Crain's theory was Brown committed suicide, but the Meeks attempted to "cover it up" by moving his body to make it look like he was murdered. Samples interviewed Crain several times about his theory, discussing their opinions of the publicized evidence, the Office of the Attorney General's report, and other aspects of the case. Samples and Crain reiterated during their sessions they were only stating their opinions.

Sometime after the conclusion of the interviews, Dot Comply, Inc. engaged Crain as an independent contractor. It did not hire Crain to investigate Brown's death, nor did it make any statements regarding the case. Nonetheless, in August 2022, Dot Comply

received a letter from Klein on behalf of the Meeks demanding Dot Comply disclose if it had a client who requested the investigation of the Brown case. Dot Comply hired Richard Biggs as its attorney, and Biggs formally responded to the demand letter. Shortly thereafter, the Meeks sued Samples, KXDJ, Crain, Dot Comply, and Biggs.

The Meeks alleged that Appellants collectively engaged in a conspiracy to defame them through various statements made by Samples and Crain during their interviews. During the pendency of trial, Appellants each filed their own motion to dismiss under the TCPA. Biggs was nonsuited with prejudice by the Meeks shortly after he filed his TCPA motion.[3] After a hearing, the trial court denied Appellants' TCPA motions. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's denial of a TCPA motion to dismiss de novo. *Garza v. Perez*, No. 07-23-00271-CV, 2024 Tex. App. LEXIS 2804, at *5 (Tex. App.—Amarillo Apr. 23, 2024, no pet. h.) (mem. op.) (citing *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021)). The party defending against a claim must first establish the claim is based on or is in response to that party's exercise of its right to free speech, to petition, or of association. §§ 27.001–27.011; *Mesquite Servs., LLC v. Standard E&S, LLC*, 610 S.W.3d 548, 555 (Tex. App.—Amarillo 2020, pet. denied). Once the moving party has established its burden by a preponderance, the burden shifts to the nonmoving party to establish its claim by clear and specific evidence. *Id.*

---

[3] A TCPA motion survives a nonsuit because it affords affirmative relief including attorney's fees and sanctions. *Abercrombie v. Angela Hightower Enterprises, Inc.*, No. 07-20-00139-CV, 2021 Tex. App. LEXIS 2920, at *2 (Tex. App.—Amarillo Apr. 19, 2021, no pet.) (mem. op.).

We also review de novo under the TCPA "whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims." *Landry's, Inc.*, 631 S.W.3d at 46 (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.)). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). The trial court must nonetheless dismiss the nonmovant's claims if the moving party establishes an affirmative defense or is otherwise entitled to judgment as a matter of law. § 27.005(d).

We consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating facts on which liability or the defense is based. *Garza*, 2024 Tex. App. LEXIS 2804, at *5 (citing § 27.006(a)). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Id.* (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). We are to view the pleadings and evidence in the light most favorable to the nonmovant. *Id.* (citing *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied)). Whether the TCPA applies is an issue of statutory construction, which we also review de novo. *Id.* (citing *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018)).

## APPLICABLE LAW

The TCPA, also referred to as "anti-SLAPP," is codified in Chapter 27 of the Texas Civil Practice & Remedies Code. Originally passed by the Legislature in 2011, the stated purpose of the Act was and continues to be, "to encourage and safeguard the

constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." § 27.002. Under the statute, persons who are sued for exercising their rights of free speech, petition, or association may move the trial court to dismiss the clams against them with prejudice. § 27.003(a). A person's exercise of the right of free speech is only protected if it is made in connection with a "matter of public concern." § 27.001(3).

"Matter of public concern" was originally broadly defined to include "an issue related to:

(A) health or safety;

(B) environmental, economic, or community well-being;

(C) the government;

(D) a public official or public figure; or

(E) a good, product, or service in the marketplace."

§ 27.001(7) (2011); Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64.

However, this broad definition encompassed more than just litigation involving constitutional rights, and the Legislature amended the statute in 2019 to narrow the definition of "matter of public concern" to "a statement or activity regarding:

(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B) a matter of political, social, or other interest to the community; or

6

(C)  a subject of concern to the public."

§ 27.001(7) (2019); Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws

684; *see Garza* 2024 Tex. App. LEXIS 2804, at *6 n.8 (discussing legislative history and

purposes of amendment); *see also Vaughn-Riley v. Patterson*, No. 05-20-00236-CV,

2020 Tex. App. LEXIS 9371, at *6–8 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem.

op.) (discussing legislative arguments for TCPA amendment).

The 2019 amendment also narrowed the class of "legal action" subject to dismissal

under the Act from those "based on, relate[d] to, or is in response to" a person's exercise

of rights to only those "based on or [are] in response to" the exercise of rights.  § 27.003(a)

(2019); *compare* § 27.003(a) (2011).  This left the class of claims subject to the TCPA

largely those involving a genuine exercise of constitutional rights regarding matters truly

of public concern.  The amended TCPA applies to the present controversy, and we

examine Appellants' motions under the framework of the amended TCPA.[4]

## ANALYSIS

The single issue raised by all Appellants is the denial of each of their respective

TCPA motions to dismiss.  They challenged the Meeks' claims under the TCPA on the

basis the claims were based upon or in response to their respective exercise of the right

of free speech.  Under the TCPA, "exercise of the right of free speech" means a

communication made in connection with a matter of public concern.  § 27.001(3).

---

[4] The 2019 amendment to the TCPA applies to all actions brought after September 1, 2019.  Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64.

7

A "communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. § 27.001(1). "Matter of public concern" means a statement or activity regarding:

(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

(B) a matter of political, social, or other interest to the community; or

(C) a subject of concern to the public.

§ 27.001(7).

## SAMPLES AND CRAIN'S DEFAMATORY STATEMENTS

The Meeks' claims are based primarily on the comments made by Samples and Crain during a radio show and podcast produced by KXDJ. The radio shows/podcasts are clearly a "communication" under the Act, and their statements fall within the TCPA if they are in connection with a "matter of public concern." Public matters include, among other things, the "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions." *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)). Samples and Crain argue their interviews regarding Crain's theories on Brown's cause of death were in connection with a matter of public concern because they involved a crime.

The Meeks respond admitting "the investigation into the disappearance of Thomas Brown may be an issue of local public concern," but argue the particular theories of the family's involvement are not a matter of public concern. As with any statute, courts must apply the TCPA "as written" and "refrain from rewriting text that lawmakers chose."

8

*Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133 (Tex. 2019) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)). This means enforcing "the plain meaning of the text unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result." *Id*. (quoting *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015)). Here, the Act's requirement is that the statement must only be "*in connection* with a matter of public concern," and the theories forwarded by Samples and Crain, whether adequately supported or not, are in connection with the disappearance of Thomas Brown which, as the Meeks admit, was a matter of public concern, albeit locally. We conclude Samples and Crain met their burden to prove by a preponderance the claims against them were based on or in response to their exercise of the right of free speech, and the TCPA applies to the Meeks' claims.

Having proven the Act applies, the burden shifted to the Meeks to present evidence of a prima facie case of each essential element of their claims. Because a civil conspiracy claim requires the accomplishment of an underlying tort, we examine the evidence the Meeks presented in their response of each essential element of their defamation claim.[5]

The elements of defamation are:

(1) the defendant published a false statement;

(2) that defamed the plaintiff;

(3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and

---

[5] The tort of defamation includes libel and slander. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Libel occurs when the defamatory statements are in writing. *Id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. The plaintiff must also plead and prove damages, unless the defamatory statements are defamatory per se. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Therefore, although the Meeks asserted claims for "libel, defamation, and defamation per se," they only asserted one cause of action for defamation.

9

(4) damages (unless the statement constitutes defamation per se).

*D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

As a matter of law, the Meeks were unable to make a prima facie case for the second element: Samples and Crain published a statement which defamed the Meeks. Even if a statement is false, it must be defamatory in order to be actionable. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018) (statement must reasonably be capable of defamatory meaning). Whether the statement is defamatory depends on the context of the statement and whether the statement is an assertion of verifiable fact. *Id.* at 624. Opinions masquerading as fact are still opinions and may not form the basis of a defamation claim. *Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 414 (Tex. App.—Amarillo 2021), *aff'd by*, 662 S.W.3d 355 (Tex. 2023). Whether a statement is an opinion is a question of law. *Id.*; *Bentley v. Bunton*, 94 S.W.3d 561, 597 (Tex. 2002). The "inquiry is objective, not subjective." *Tatum*, 554 S.W.3d at 624 (quoting *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004).

The Meeks' response to the TCPA motions referenced as evidence several documents attached to their live petition, including excerpts from the Samples/Crain interviews on KXDJ Radio. "[S]tatements that are not verifiable as false" are not defamatory. *Tatum*, 554 S.W.3d at 638 (citing *Neely*, 418 S.W.3d at 62). And even when a statement is verifiable, it cannot give rise to liability if "the entire context in which it was made" discloses that it was not intended to assert a fact. *Id.* (citing *Bentley*, 94 S.W.3d

10

at 581).  A statement that fails either test—verifiability or context—is called an opinion.

*Id.*

In the interviews, Sample and Crain referred to publicly available information, including the report produced by the Attorney General's Office and interviews given on podcasts by several people involved with the case.  The following sample excerpt is from the first few minutes of the first interview and is indicative of the tenor and style of the conversation the pair engaged in throughout the interviews:

> SAMPLES: Those of you who do listen on a regular basis know that I've never pushed the suicide **narrative** in the Tom Brown case.  And as a matter of fact, I've gone to extremes some would our[sic] argue in the other direction saying that, "No, no, I just can't imagine that.  That is just too brutal."  A suicide and a family related coverup is something that I have never committed to on this radio program.  And so I want to set that straight because the facts do matter to some of us.
>
> ***
>
> SAMPLES: And I have come to the conclusion that at the very least, at the very least, there is as much evidence about the **theory** of what happened to Tom Brown and who was involved that you're about to hear as there has been evidence of any other theory that has been thrown out there.
>
> ***
>
> SAMPLES: You have looked at all of the evidence that has been presented and released, because they have much we have learned that they have not released, but you have looked at the evidence that's been released by the Attorney General's Office and by all that to Mr. Klein has put forth.  You have come into Canadian, you have driven routes, you have times [sic] some routes.  You and your investigative background have taken a look at some of the claims of all involved in this case.  And you have come to the conclusion that only one **theory** makes sense.  And what is that theory?
>
> CRAIN: The **theory** is that regardless of the manner that Penny [Meek] found Thomas deceased and that with the aid of Tucker and Chris, they attempted to alter the state of whatever had happened. . . .

11

SAMPLES: So you **believe** that Tom Brown likely took his own life and that his immediate family in Canadian were involved in somehow some way covering that up?

CRAIN: Yes.

(emphasis added).

It is clear from the context of the statements he made during the interviews, Crain merely recited his opinions regarding the case. He used the terms "believe," "theory," and "opinion" throughout the interviews, indicating he did not attempt to state facts about Brown's cause of death, only his guess about "what really happened." Even if in poor taste, when his statements are viewed in the full context of the radio show, Crain's theories are mere conjecture. Samples and Crain also invited the audience to make up their own minds, with Crain stating at one point, "I'm actually asking for people not to believe me, to prove it to yourself." Viewing the statements in context, at worst, Samples and Crain expressed opinions masquerading as fact. *Tatum*, 554 S.W.3d at 638 (citing *Bentley*, 94 S.W.3d at 581). Because of the concern defamation actions should not curtail otherwise constitutionally protected free speech, opinions are not actionable. *Supra*. Therefore, the Meeks could not, as a matter of law, present evidence of a prima facie case for each essential element of their claims against Samples and Crain. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

**THE CIVIL CONSPIRATORS**

Regarding the remaining Appellants—KXDJ, Dot Comply, and Biggs—the Meeks state in their pleadings the remaining parties conspired to commit defamation. Civil conspiracy is a "derivative tort," meaning "a defendant's liability for conspiracy depends

12

on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Mesquite Servs., LLC v. Standard E&S, LLC*, 610 S.W.3d 548, 563 (Tex. App.—Amarillo 2020, pet. denied) (citing *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 813–14 (Tex. App.—Austin 2017), *aff'd by*, 611 S.W.3d 1 (Tex. 2020)). Because the Meeks' conspiracy allegations against the remaining Appellants depend on the merit of the claims against Samples and Crain, a lack of "clear and specific evidence" of defamation necessarily requires the dismissal of the claims against the remaining Appellants. *See Dickson*, 647 S.W.3d at 418–19; *Lilith Fund for Reprod. Equity*, 662 S.W.3d at 369 n.78.

We sustain the single issue of the denial of the TCPA motion with respect to Samples, KXDJ, Crain, Dot Comply, and Biggs. Accordingly, we reverse the trial court's denial of each respective Appellant's motion under the TCPA and render judgment the claims against Samples, Crain, KXDJ, Dot Comply, and Biggs are dismissed. We also remand this matter for determination of the award of attorney's fees and sanctions against the Meeks as prescribed by statute. § 27.009(a).

## CONCLUSION

The trial court's judgment is reversed. We render judgment in favor of Appellants dismissing all claims against them and remand this matter for determination of attorney's fees and sanctions in accordance with this opinion.

Alex Yarbrough
Justice

13