Affirmed in Part, Reversed and Rendered in Part and Memorandum Opinion
filed August 25, 2005









 

Affirmed in Part, Reversed and
Rendered in Part and
Memorandum Opinion filed August 25, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00517-CV

____________

 

THOMAS E. OTT, Appellant

 

V.

 

HAROLD TOUCHSTONE,
CLYDE E. HICKS AND CAROLYN S. HICKS, Appellees

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 01-41046

 



 

M E M O R A N D U M   O P I N I O N








This is a suit brought by Thomas E. Ott
against Harold Touchstone, Clyde E. Hicks, and Carolyn S. Hicks, for specific
performance of a contract to purchase real estate, or alternatively, for money
damages.  A jury found in favor of Ott,
the purchaser under the contract, but the trial court initially granted
judgment notwithstanding the verdict (JNOV) in favor of both Touchstone, the
seller, and the Hicks, who purchased the property when Ott and Touchstone
failed to close on the sale.  The trial
court later amended its judgment to deny Touchstone=s motion for JNOV
and to award $100 in damages to Ott.  On
appeal, Ott contends the trial court erred by (1) entering a second judgment
without withdrawing the first judgment, (2) granting JNOV for Touchstone, (3)
granting JNOV for the Hicks, (4) failing to award specific performance or the
damages found by the jury, and (5) failing to award attorney=s fees.  For the reasons explained below, we affirm in
part and reverse and render in part.

Background

Ott entered into an earnest money contract
with Touchstone to purchase a piece of property near his restaurant in Humble,
Texas, for $100,000, and gave Touchstone a $100 check as earnest money.[1]  The earnest money contract provided that the
sale was to close on or before July 30, 2001. 
It also provided that, if financing was obtained, the closing date could
be extended Aup to fifteen days if necessary@ to comply with
the lender=s closing requirements.[2]  Although there is some evidence that the
closing was originally set for July 30, 2001, Ott testified that the title
company handling the closing, Stewart Title, contacted him on July 24th and
informed him that the closing was scheduled for July 31.  








Also on July 24, 2001, Ott saw Clyde Hicks
near the property, and walked over to speak to him.  Ott told Hicks that he was purchasing the
property and that the closing was to occur on the 31st.  Hicks, who apparently had been interested in
purchasing the property for some time, called Touchstone to inquire about the
property.  When Hicks did not reach
Touchstone, he left a message. 
Touchstone, who had been out of town, returned Hick=s call on July 30,
and confirmed that he was selling the property to Ott and that the closing was
to take place on July 31.  Hicks told him
that, if the sale did not go through, he would be interested in buying the property.

The closing on the 31st was originally
scheduled to take place at 10:00 a.m., but because some of the closing
documents required revision, it was delayed. 
According to Ott, he had obtained the financing and everything was ready
for closing by 3:00 p.m. that day. 
However, around noon or 1:00 p.m., Touchstone called Ott and told him
that he was not going to sell the property to him.  Ott went to Stewart Title at 3:00 p.m., but
when a Stewart Title employee called Touchstone to tell him that they were
ready to close, he did not come.[3]

Some time that afternoon, Touchstone
called Hicks and told him that the buyer had not fulfilled the contract and he
was putting the property back on the market. 
The next day, August 1, Touchstone called Hicks again and told him he
would sell the property to him for $105,000. 
They entered into a contract that day,[4]
and closed the sale on August 9.  The
closing took place at the same Stewart Title office that Ott had used.  In preparing for the closing, Stewart Title
used a number of the documents previously prepared for Ott=s closing, and
merely changed the buyer=s name to Clyde and Carolyn Hicks.  Also included with the closing documents was
an affidavit executed by Touchstone in which he affirmatively represented that
there were no leases, contracts to sell the land, or other parties in
possession of the property.  








On August 9, Ott=s attorney sent a
letter to Touchstone demanding specific performance of their earnest money
contract.  After Touchstone received the
letter on August 27, he told Ott that he had already sold the property to the
Hicks.  Ott then brought this lawsuit
against Touchstone and the Hicks, seeking either specific performance of the
earnest money contract from Touchstone and a judgment voiding any deed to the
Hicks, or, alternatively, money damages. 
Ott also sought attorney=s fees as provided
in the earnest money contract.

The case was tried in August of 2003, and
the jury returned a verdict in favor of Ott and against Touchstone and the Hicks.  Touchstone and the Hicks filed motions for
JNOV, and on March 2, 2004, the trial court entered a final judgment granting
both of their motions.  Eight days later,
on March 10, 2004, the trial court wrote on the final judgment AThis order is void@; the court then
entered another final judgment granting the Hicks= motion for JNOV,
but denying Touchstone=s motion for JNOV.  The court also awarded Ott $100 to be paid by
Touchstone.  Although not expressly
stated in the judgment, by denying Touchstone=s JNOV the trial
court let stand the jury=s findings that Touchstone breached the
earnest money contract.[5]  This appeal followed.

Analysis of the Issues








On appeal, Ott contends the trial court
erred by (1) entering a second judgment without withdrawing the first judgment,
(2) granting JNOV for Touchstone, (3) granting JNOV for the Hicks, (4) failing
to award either specific performance or the damages found by the jury, and (5)
failing to award attorney=s fees. 
As we explain below, we find that the trial court did not err by
entering the second final judgment and that it is the valid, final judgment in
this case.  In addition, because the
second judgment denied Touchstone=s motion for JNOV,
we need not consider Ott=s contention that the JNOV in favor of
Touchstone was error.[6]  Regarding the Hicks= motion for JNOV,
which the trial court granted, we find no error.  We also hold that the trial court did not err
in refusing to award specific performance or in refusing to award the $105,000
damages the jury awarded to Ott. 
However, we hold that, as the prevailing party against Touchstone, Ott
is entitled to attorney=s fees. 

1.       The
Trial Court Did Not Err in Entering the Second Judgment, Which is the Valid,
Final Judgment in this Case.

In his first issue, Ott contends the trial
court erred in entering a second final judgment on March 10, 2004, without
withdrawing the March 2 final judgment it entered earlier.  Ott argues that there can be only one final
judgment in a case, and cites Mullins v. Thomas for the proposition that
Athe entry of a
second judgment in the same case is not a vacation of the first, and that if
there is nothing to show the first was vacated, the second is a nullity.@  136 Tex. 215, 150 S.W.2d 83, 84 (1941).  However, as this court explained in Quanaim
v. Frasco Restaurant & Catering, the general rule expressed in Mullins
and its progeny has been eroded over the past decade by later Texas Supreme
Court cases.  See 17 S.W.3d 30, 37B39 Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  We also find
that Quanaim disposes of this issue.








In Quanaim, the trial court entered
one summary judgment order on May 11, 1998, and then entered another order on
May 18, 1998, identifying different grounds for summary judgment than the May
11 order.  See id at 34, 36B37.[7]  On appeal, the Quanaim court was
required to determine whether the May 18 order vacated the May 11 order or
whether the May 11 should be reinstated, when there was nothing in the record
to suggest that the trial court intended to vacate the May 11 order.  Id. at 39B40.  After extensively examining the evolution of
the applicable law post-Mullins, the Quanaim court held that the
May 18 order constituted a modification, correction, or reformation of the May
11 order, and that, by entering the May 18 order, the trial court presumptively
vacated the May 11 order, making the May 18 order the only final judgment in
the case.  Id. at 40.  

The Quanaim court=s reasoning
applies here.  But this case is even
stronger than Quanaim because we have more information regarding the
judge=s intent than the Quanaim
court had.  The trial court in this case
wrote AThis order is void@ on the March 2
judgment on the same day she signed the second judgment.  Therefore, unlike Quanaim, the record
contains a clear indication, apart from the denial of Touchstone=s motion for JNOV,
that the trial court intended to replace the March 2 judgment with the March 10
judgment.  We therefore hold that the
March 10 order is the only valid, final judgment in this case.  Ott=s first issue is
overruled.

2.       The
Trial Court Did Not Err by Granting the Hicks= Motion for JNOV.

In his fourth issue, Ott contends the
trial court erred in granting the Hicks= motion for
JNOV.  Question No. 4, the only question
directed to the Hicks= conduct, read as follows: AAt the time they
purchased the property on August 9th, 2001 did Clyde or Carolyn Hicks know that
the agreement found by you in Question No. 1 was still in effect?@  The jury answered AYes.@  The trial court granted JNOV, determining
that no evidence supported the jury=s answer.  On appeal, Ott contends the jury was entitled
to infer from direct and circumstantial evidence that, when they closed on
August 9, the Hicks knew the earnest money contract was effective through
August 14.  The Hicks respond with two
points: (1) no evidence supports an inference that they actually knew the
contract remained in effect when they closed on the property; and (2) Ott is
impermissibly stacking inferences that relate to an issue irrelevant to this
appeal:  whether the Hicks should have or
could have known about the August 14 date. 
We agree with the Hicks.  

a.       Applicable
standard of review








A trial judge may grant a motion for JNOV
only when there is no evidence to support one or more of the jury=s findings of fact
necessary to the judgment.  Brown v.
Bank of Galveston, Nat=l Ass=n, 963 S.W.2d 511,
513 (Tex. 1998).  No evidence exists, and
a judgment notwithstanding the verdict should be entered, when the record
discloses one of the following: (1) a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a scintilla of evidence; or (4) the evidence
establishes conclusively the opposite of a vital fact.  See Juliette Fowler Homes, Inc. v. Welch
Assocs., Inc., 793 S.W.2d 660, 666 n.9 (Tex. 1990).  

As an appellate court, we consider the
evidence in the light most favorable to the verdict and indulge every
reasonable inference that supports it.  See City of Keller v. Wilson, ___ S.W.3d
___, No. 02-1012, 2005 WL 1366509, at *10 (Tex. June 10, 2005).  The evidence is legally sufficient if it
would enable reasonable and fair-minded people to reach the verdict under
review.  See id. at *14.  We credit favorable evidence if reasonable
jurors could consider it in a favorable light, and disregard contrary evidence
unless reasonable jurors could not discard it. 
See id.  We cannot
substitute our judgment for that of the jury, so long as the evidence falls
within the zone of reasonable disagreement. 
See id. at *10.  But, Aif the evidence
allows of only one inference, neither jurors nor the reviewing court may
disregard it.@  Id.  








Both direct and circumstantial evidence
may be used to establish any material fact. Lozano v. Lozano, 52 S.W.3d
141, 149 (Tex. 2001) (per curiam); Browning‑Ferris, Inc. v. Reyna,
865 S.W.2d 925, 928 (Tex. 1993).  To
raise a genuine issue of material fact, however, the evidence must transcend
mere suspicion.  Evidence that is so
slight as to make any inference a guess is in legal effect no evidence.  Lozano, 52 S.W.3d at 148; Browning‑Ferris,
Inc., 865 S.W.2d at 928.  Meager
circumstantial evidence from which equally plausible but opposite inferences
may be drawn is speculative and legally insufficient to support a finding.  See City of Keller, 2005 WL 1366509,
at *4B5; Wal‑Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); Entex v.
Gonzalez, 94 S.W.3d 1, 7B8 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied).  In this
regard, a vital fact may not be established by piling inference upon
inference.  Schlumberger Well
Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 858
(Tex.1968).  Thus, facts from which an
inference may properly be drawn must be established by direct evidence, not by
other inferences.  Entex, 94
S.W.3d at 8 (citing Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d
791, 794 (Tex. 1955)).

b.       Review
of the facts

We have reviewed the evidence carefully
and find that the trial court did not err in granting the Hicks= JNOV.  The evidence shows only that the Hicks knew
that Ott and Touchstone had a contract to purchase the property and that it was
to close on July 31st.  On that day,
Touchstone called Ott and told him the sale did not occur, and he was putting
the property back on the market.  Ott
contends that the jury could infer that the Hicks knew the earnest money
contract was still in effect because the Hicks knew Ott had a contract to
purchase the property, they closed within days of Ott=s failed closing,
and they paid $5,000 more for the property than Ott offered.  However, none of the evidence Ott points to,
whether reviewed individually or in total, raises a scintilla of evidence or
permits a reasonable inference to support the jury=s finding that the
Hicks knew, when they closed on the property on August 9th, that the earnest
money contract allegedly was still in effect. 


When Ott and Hicks spoke on July 24th, Ott
did not tell Hicks the purchase price or other terms of the earnest money
contract, and he did not give Hicks a copy of his contract.  Ott told Hicks only that the contract was to
close on July 31st.  Likewise, when
Touchstone and Hicks spoke, Touchstone merely confirmed that he was selling the
property on July 31st.  On the afternoon
of the 31st, Touchstone told Hicks the buyer did not fulfill the contract and
he was putting it back on the market. 
Both Hicks and Touchstone testified that they did not discuss the terms
of the sale of the property until August 1st, when they signed their earnest
money contract.  Ott contends, however,
that the jury could infer that Clyde Hicks and Touchstone discussed terms,
including the higher purchase price, on the 31st, because Hicks= earnest money
check was dated July 31st.  However, even
if the jury inferred that Hicks and Touchstone discussed terms at that point,
no evidence showed that Hicks knew anything more than what Touchstone told him
that afternoonCthat Ott no longer had a contract to
purchase the property. 








There also is no evidence that Ott,
Touchstone, or anyone else ever told the Hicks that Ott=s earlier contract
was still in effect.  Ott argues the jury
nonetheless could infer that the Hicks knew the earnest money contract was
still pending when they closed, because Clyde Hicks was familiar with earnest
money contracts generally and was aware of the standard language providing for
an extension of up to fifteen days to comply with the lender=s
requirements.  This argument is riddled
with problems, the first being that Hicks did not know the terms of the
contract.  The second problem is that the
terms of the contract provided for an extension of Aup to 15 days if
necessary@ to comply with the lender=s
requirements.  At most, lender
requirements extended the earnest money contract to July 31st.[8]  And, while the jury found that the earnest
money contract extended beyond July 30th, it made no finding as to how far beyond
the 30th the contract extended.  The jury
could have concluded that the earnest money contract was extended to the 31st,
and that Touchstone breached the earnest money contract when he did not close
on that day.  Thus, on this record, Hicks
could not know if the earnest money contract contained the fifteen-day
extension period, if the provision had been triggered, or, if triggered, how
many days it extended the earnest money contract. 

Likewise, other evidence Ott points toCthat Stewart Title
used some of Ott=s closing documents in the Hicks= closingCneither proves nor
disproves that the Hicks knew the earnest money contract was still in effect on
August 9th.  At most, this evidence shows
that the Hicks knew that Ott had a contract with TouchstoneCa fact no one
disputes and a fact that does not prove Ott=s necessary
ultimate issue.  It is no evidence that
the Hicks knew on August 9th that the earnest money contract allegedly was
still in effect.  

For these reasons, we conclude that the
trial court did not err in granting the Hicks= motion for
JNOV.  We overrule Ott=s fourth issue.

 








3.       The Trial Court Did Not Err by Failing
to Award Specific Performance or Money Damages.

 

In his fifth issue, Ott contends the trial
court erred when it awarded neither specific performance nor the damages found
by the jury.  To resolve this issue, we
first look to the earnest money contract to determine the parties= agreement
regarding damages for failing to comply with the contract.  In relevant part, the earnest money contract
provides that, if Touchstone fails to comply with the contract for any reasonCother than certain
specified reasons that are not relevant hereChe will be in
default and Ott may, Aas sole remedy,@ either enforce
specific performance, or terminate the contract and receive the earnest
money.  A statement giving Ott the third
remedy of Aseek[ing] such other relief as may be
provided by law@ was crossed out.  Thus, Ott=s only remedy
under the earnest money contract was either specific performance or termination
of the contract and the return of the earnest money.  Touchstone and Hicks contend that return of
the earnest money is all the relief Ott is entitled to receive.  We agree.

a.       Ott
is not entitled to specific performance.

In his prayer for relief, Ott requests
that we declare the deed from Touchstone to Hicks void and enter judgment that
Touchstone shall sell the property to Ott. 
However, Ott neither argues nor cites authorities holding that he is
entitled to specific performance. 
Therefore, he has waived this contention.  See Tex.
R. App. P. 38.1(h).  Moreover,
specific performance is an equitable remedy, and to succeed, the party seeking
to compel specific performance must show that granting this relief will not
operate inequitably on the defendant.  See
Kress v. Soules, 152 Tex. 595, 261 S.W.2d 703, 704 (1953).  An award of specific performance rests in the
sound discretion of the trial judge, whose action will not be disturbed unless
an abuse of discretion is shown.  Walzem
Dev. Co., Inc. v. Gerfers, 487 S.W.2d 219, 222 (Tex. App.CSan Antonio 1972,
writ ref=d n.r.e.).  It is not a matter of absolute right.  Id. 









We already have determined that the Hicks
were entitled to JNOV because they did not know the earnest money contract was
still in effect when they closed on the property.  The evidence also showed that, after buying the
property, the Hicks spent more than $80,000 improving it.  To require the Hicks to divest themselves of
the property, when they were innocent purchasers who made substantial
improvements to the property, would be inequitable.  See Kress, 261 S.W.2d at 706.  Therefore, we cannot say that the trial court
abused its discretion by failing to award specific performance.

b.       Ott
is not entitled to the damages found by the jury.

Similarly, the trial court did not err in
refusing to award the damages found by the jury.[9]  As noted above, the earnest money contract
provided that, if Touchstone defaulted, Ott=s remedies were
limited to specific performance or return of his earnest money.  We have already determined that Ott was not
entitled to specific performance. 
Therefore, he was entitled only to the return of his earnest money.  He may not recover money damages for the
breach of the earnest money contract other than to secure the return of his
earnest money.  See Buhler v. McIntire,
365 S.W.2d 237, 239B40 (Tex. Civ. App.CAustin 1963, writ
ref=d n.r.e.) (holding
that party whose contract for sale of real property limited his damages to
specific performance or return of cash deposit could not recover monetary
damages for breach of contract).  

The trial court=s judgment awarded
Ott the earnest money he paid.  We find
no error and overrule this issue.

4.       Ott
is Entitled to Attorney=s Fees as the
Prevailing Party Against Touchstone.








Finally, in Ott=s third issue, he
contends he is entitled to attorney=s fees because he
established a valid breach of contract claim and because the parties stipulated
to the amounts and reasonableness of the attorney=s fees.  This is a valid point.  The earnest money contract provided that the
prevailing party in a legal proceeding could recover reasonable attorney=s fees.  At trial, the parties stipulated as to
attorney=s fees.  Thus, the only remaining question is whether
Ott is a prevailing party.  See Twelve
Oaks Tower I, Ltd. v. Premier Allergy, Inc., 938 S.W.2d 102, 118 (Tex. App.CHouston [14th
Dist.] 1996, no writ) (basing attorney=s fees on
underlying contract rather than statutory requirements).  

On this jury charge and this judgment, Ott
clearly is the prevailing party.  The
jury found that Touchstone breached the agreement with Ott, and the trial court
denied Touchstone=s motion for JNOV.  

At oral argument, Touchstone contended Ott
was not entitled to attorney=s fees, claiming
some evidence showed that Touchstone returned Ott=s earnest money
check shortly after July 31st.  However,
this claim has three major impediments: (1) Ott testified the check was not
returned to him; (2) Touchstone did not plead payment, see Tex. R. Civ. P. 94, 95; and (3)
Touchstone did not secure any jury findings on the issue, see Brown,
963 S.W.2d at 515 (recognizing that when resolution of fact issue was required
to establish theory of recovery or defense, failure to request jury instruction
on that issue waived claim on appeal).

In short, Ott was the prevailing party
under his contract with Touchstone and, as a result, is entitled to reasonable
attorney=s fees.  See Sanchez-O=Brien Oil &
Gas Corp. v. Austin Res. Corp., No. 14-96-00240-CV, 1998 WL 322686, at
*5 (Tex. App.CHouston [14th Dist.] June 18, 1998, pet.
denied) (AA prevailing party is >one of the parties
to a suit who successfully prosecutes the action or successfully defends
against it, prevailing on the main issue, even though not to the extent of its
original contention.=@) (citing FDIC
v. Graham, 882 S.W.2d 890, 900 (Tex. App.CHouston [14th
Dist.] 1994, no writ)).  We therefore
sustain Ott=s third issue, reverse in part, and render
judgment that Ott recover attorney=s fees against
Touchstone in the amounts of $17,000 through trial, $10,000 for this successful
appeal, and $5,000 if Ott is successful in an appeal to the Texas Supreme
Court.  The remainder of the trial court=s judgment is
affirmed.

 








Conclusion

We hold that the trial court=s March 10
judgment is the valid, final judgment in this case.  We further hold that the trial court did not
err in granting the Hicks= motion for judgment notwithstanding the
verdict, and in denying Ott either specific performance or money damages.  Because Touchstone did not file a notice of
cross-appeal, we do not address his cross-point that the trial court=s original grant
of his motion for judgment notwithstanding the verdict was correct.  Because Ott was the prevailing party against
Touchstone on his breach of contract claim, we hold that the trial court erred
in failing to award Ott attorney=s fees.  We therefore affirm in part and reverse and
render in part to award Ott the attorney=s fees to which he
and Touchstone stipulated.

 

 

 

/s/                Wanda McKee Fowler

Justice

 

Judgment
rendered and Memorandum Opinion filed August 25, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Guzman.

 

 











[1]  Ott testified that he intended to
use the property as additional parking for his customers. 





[2]  The relevant
portion of the provision at issue, as highlighted, reads as follows:

 

CLOSING:
The closing of the sale will be on or before 7-30-01 or within 7 days
after objections to matters disclosed in the Commitment or by the survey have
been cured, whichever date is later (the Closing Date).  If financing or assumption approval has
been obtained pursuant to Paragraph 4, the Closing Date will be extended up
to 15 days if necessary to comply with lender=s
closing requirements (for example, appraisal, survey, insurance policies,
lender-required repairs, closing documents). 
If either party fails to close this sale by the Closing Date, the
non-defaulting party will be entitled to exercise the remedies contained in
Paragraph 15.  





[3]  Touchstone
testified that he refused to sell to Ott because he felt he was getting Athe run around@ after
the closing date and time had been changed several times.





[4]  Touchstone
testified that Hicks made out an earnest money check when he met with him on
August 1, but the check was dated July 31.





[5]  The jury
answered AYes@ to the following questions: (1) Did Thomas Ott and
Harold Touchstone have an agreement for the purchase and sale of real property
in Humble, Harris County, Texas?; (2) 
Did the agreement between Mr. Touchstone and Mr. Ott extend past July
30, 2001?; and (3) Did Harold Touchstone fail to comply with the agreement? 





[6]  In its
appellate brief, Touchstone briefed a cross-point that it was entitled to
JNOV.  However, as conceded at oral
argument, Touchstone did not file a notice of cross-appeal, and so withdrew the
cross-point.  See Tex. R. App. P. 25.1(c).  Consequently, we do not address Ott=s second issue, in which he contends the JNOV in favor
of Touchstone was error.





[7]  The trial
court had also entered a summary judgment order on May 5, but this order was
interlocutory because, at the time it was signed, other claims and parties
remained in the suit.  See 17
S.W.3d at 36.  The May 11 order, however,
granted summary judgment on grounds that terminated the outstanding claims and
rights of all parties.  Id. at 36B37. Therefore, it was only necessary for the Quanaim
court to determine the effect of the May 18 order on the May 11 order.  Id. at 38B40.





[8]  The evidence shows that the closing
scheduled for the morning of July 31 was delayed because Ott=s loan documents provided for an
escrow account, which he did not want, and so the documents had to be
redrafted.  At oral argument, Ott
conceded that the evidence shows that, at most, lender requirements extended
the earnest money contract to July 31st. 





[9]  The jury found
that, to fairly and reasonably compensate Ott for his damages resulting from
Touchstone=s failure to comply with the earnest money contract,
Ott was entitled the difference between the contract price and the market value
of the property at the time of the breach in the amount of $5,000.  The jury also found Ott was entitled to
consequential damages to acquire similar property in the amount of $100,000.